United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICIA D. WHITEHEAD,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

                                       /

No. C 06-00012 SBA

**ORDER**

[Docket Nos. 9, 10]

Plaintiff Patricia D. Whitehead ("Plaintiff") brings this action pursuant to the judicial review provision of the Social Security Act, 42 U.S.C. § 405(g), to obtain review of a decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff disability and disability insurance benefits. Now before the Court are Plaintiff's Motion for Summary Judgment or Remand ("Motion") and Defendant's Cross-Motion for Summary Judgment ("Cross-Motion").

## **BACKGROUND**

**A.     Procedural History**

Plaintiff filed an application for disability and disability insurance benefits pursuant to Title II of the Social Security Act (the "Act") on March 7, 2003, alleging a disability that began on May 24, 2001. Tr. 59-61. Plaintiff alleged physical aliments – scoliosis[1] of the spine and high blood pressure – that limited her ability to work. Tr. 73. Plaintiff's claim was denied on July 9, 2003, and her request for reconsideration was denied on September 30, 2003. Tr. 17. She requested a hearing on November 26, 2003. *Id.*

On January 20, 2005, a hearing was held before an Administrative Law Judge ("ALJ").

---

[1] Scoliosis is defined as an "abnormal lateral curvature of the spine" by *The American Heritage® Dictionary of the English Language*, Fourth Ed., 2000.

1 Plaintiff appeared with counsel and testified. Tr. 205-253. On April 25, 2005, the ALJ issued a
2 written decision denying Plaintiff's claim for benefits. Plaintiff filed a request for review of the
3 ALJ's decision by the Appeals Council on September 21, 2005. Tr. 12. On November 21, 2005, the
4 Appeals Council denied review, and noted that the denial meant that the decision of the ALJ was a
5 final decision of the Commissioner. Tr. 5-7. Plaintiff filed the instant request for judicial review on
6 January 4, 2006.

7 On September 25, 2006, Plaintiff filed a Motion for Summary Judgment or Remand. On
8 October 25, 2006, Defendant filed its Opposition to Plaintiff's Motion and filed a Cross-Motion for
9 Summary Judgment. Docket No. 10. On November 6, 2006, Plaintiff filed a Reply Memorandum.
10 Docket No. 11.

**B.     Factual Background**

Plaintiff alleges that she is disabled and unable to work by reason of "severe" physical ailments. Plaintiff contends that her disability derives from Scoliosis of the thoracic spine coupled with hypertension (high blood pressure), and depression.

Plaintiff was born on May 28, 1948, and is now 58 years-old. Tr. 62. She is a high school graduate who attended one year of college. Tr. 77. Plaintiff has worked in the home furnishings business for the last 15 years. Tr. 208.

When questioned about her Scoliosis, Plaintiff stated the first time anyone asked about her spine was a teacher in high school who wondered if she had polio before. Tr. 208. The teacher noticed that one side of her body was smaller than the other side. *Id*. When Plaintiff was a child, the Scoliosis caused her some back pain, but she was able to play girl's sports. Tr. 209.

At the hearing, Plaintiff testified that her experience in the home furnishing business is both the sales of furniture and interior design and home drapery sales. Tr. 208. She worked in sales for Suburban House, which involved working both at customer's homes and on the showroom floor, walking and showing furniture, and carrying samples back and forth. Tr. 210. These fabric samples could weigh at least 25 pounds. *Id.* Plaintiff testified that as she got older her spine seemed to be compressing and she began to feel pain and numbness in her leg and left arm and hand. Tr. 211.

Towards the end of her employment with Suburban House, Plaintiff testified that the

combination of the pressure from sales – she worked strictly on commission – and marital problems gave her high blood pressure. Tr. 212.  She was taking three different prescription medications for hypertension.  *Id*.  Plaintiff told the ALJ that her condition has improved due to medications and reduced stress.  Tr. 213.  Plaintiff also stated that her depression had improved and she was participating in counseling at Kaiser, and no longer taking anti-depressant medication or drinking alcohol.  Tr. 214-15.

On her last day of work, Plaintiff was "called on the carpet," because on the previous day, she had left work 15 minutes early to meet her husband.  Tr. 226.  She made no attempt to go back to work after her last day at Suburban House on May 24, 2001.  *Id*.

Plaintiff testified that she stopped working at Suburban House because she could no longer bear the pressure of her personal life and the pressure of her sales position.  Tr. 219.  She stated that her back pain was constant, with intermittently sharper pain, radiating into her right arm and down her left arm and leg.  Tr. 219.  Plaintiff testified that she could only stand for "about 15 minutes" before having to take a break, and she could only sit for "around 15 minutes" before needing to stretch.  Tr. 220.  She went on to state that she could only walk "half a block" before needing a break.  *Id*.  She testified that she has problems with her memory and concentration.  Tr. 221.  She cannot remember names, dates, and numbers, or specifics very well, although she can read a newspaper or magazine.  *Id*.  Plaintiff stated that she wakes up "about every three hours" during the night due to back pain, which leaves her constantly tired.  Tr. 222.  She also takes 15 minute breaks twice a day to lay down and rest, but not to sleep because of the pain.  *Id*.

The ALJ asked Plaintiff about what methods of treatment she has been offered and which she had accepted for her back.  Tr. 227.  Plaintiff testified that Kaiser "showed [her] some exercises to try to strengthen muscles."  *Id*.  She underwent therapy, two or thee times, involving a "heating table."  *Id*.  Additionally, Plaintiff was prescribed two medications to numb her back.  Tr. 228.  Plaintiff could not remember any other medical treatment she had received for her back.  *Id*.

When asked by the ALJ about daily activities, Plaintiff described driving once per week to the store to do some light shopping, reading, light dusting, and doing muscle strengthening exercises in the morning.  Tr. 230-31.

3

When explicitly asked by the ALJ why she stopped working on May 24, 2001, Plaintiff testified, "I was fighting the physical problems, and the lifting of the samples, and moving the furniture around was getting more and more painful. And when I was called on the carpet for leaving 15 minutes early, that was just kind of like the straw that broke – literally broke – the camel's back." Tr. 231.

**a.     Medical Evidence**

**i.     Scoliosis**

From March 5, 2003, until April 16, 2003, Plaintiff was treated at Kaiser Permanente by Dr. Suneeti Sapru, M.D., for thoracic and lumbar Scoliosis and back and neck pain. Tr. 125-29.

On June 4, 2003, at the request of the State of California, acting on behalf of the Commissioner of Social Security, Plaintiff was examined by Dr. Burton Brody. Tr. 111. Plaintiff stated during her examination that she first started noticing mid-back pain in her thirties and that it has been gradually increasing to the present. Tr. 111. She stated that she performed the usual household chores and gardening but avoided heavy lifting. *Id*.

Dr. Brody noted in his report that Plaintiff's back showed 7-8 degrees of dextroscoliosis[2] in the throracic spine with moderate stiffness, and moderate stiffness in the lumbar area with anteroflexion[3] halted at 40 degrees, with the development of paravertebral[4] muscular spasm in the lower thoracic and upper lumbar areas. Tr. 112. Dr. Brody diagnosed Plaintiff with Scoliosis of the thoracic spine and Hypertension, controlled. *Id*.

In his Functional Capacity Assessment, Dr. Brody reported that "[s]itting limited by need for frequent position change to a total of 2 hours per day. Walking and standing 15 minutes to ½ hour, 5 or 6 times daily, to a total of 3 hours per day. Lifting and carrying to 10 lbs. occasionally and 5 lbs.

---

[2] The prefix dextro derived from the Latin dexter meaning "on the right side." *The American Heritage® Dictionary of the English Language*: Fourth Edition, 2000.

[3] The prefix antero derived from the Latin anterior meaning "before or front." *Webster's Third New International Dictionary*, Unabridged, 1965; and flexion means "the act of bending a joint or limb in the body," *The American Heritage® Dictionary of the English Language*: Fourth Edition, 2000.

[4] Paravertebral means "located beside or adjacent to the vertebral column." *Webster's Third New International Dictionary*, Unabridged, 1965.

frequently. Moderate limitations on motions such as bending, stooping, kneeling, crawling, and squatting." Tr. 113.

An x-ray of Plaintiff's lumbosacral[5] spine on June 4, 2003, taken by Stuart S. London, M.D., revealed "acute marked thoracolumbar[6] rotatory Scoliosis convex to the left." Tr. 114.

On July 7, 2003, a non-examining State Agency medical consultant, Harmon Michelson, M.D., opined that there "is absolutely no indication in the evidence given to me which would warrant the severe restrictions suggested" by the consulting physician. Tr. 132. He went on to state, "all we have is some spasm and anteroflexion range of motion limitation." *Id*. He concluded by stating "her statement that it has been years is rendered not credible by the lack of corroboration by longitudinal medical evidence of record." *Id*. Dr. Michelson's report was affirmed by another State Agency medical consultant, Dr. John Vaillancourt, who on September 29, 2003, agreed with the non-severe assessment. Tr. 130.

On December 16, 2003, Plaintiff presented herself to Kaiser Permanente with low back pain. Tr. 167-68. On December 19, 2003, Plaintiff attended a spinal care group physical therapy session at Kaiser Permanente. Tr. 166.

### ii. Depression

Plaintiff was treated for depression at Kaiser Permanente from 1997 to October 26, 2001. Tr. 99-106; 143-64. Preceding Plaintiff's last day of work, she had depression, intimacy and relationship problems with her husband, and alcohol abuse issues. *Id*. She stated that she always felt tired, tense, passive/withdrawn behavior, panicky, indecisive, worried, depressed, fearful of losing control, experienced problems falling and staying asleep, weight change, and aggressive and violent behavior. Tr. 152, 159.

From her last day of work through October 26, 2001, Plaintiff reported mood swings, anger, sadness, marital conflict, fear, and insecurity. Tr. 102.

---

[5] Lumbosacral means "relating to the lumbar and sacral region or parts." *Webster's Third New International Dictionary*, Unabridged, 1965.

[6] Thoracolumbar means "of or relating to the thoracic and lumbar parts of the spinal column." *The American Heritage® Dictionary of the English Language*: Fourth Edition, 2000.

5

However, Plaintiff testified before the ALJ that her depression has improved, she is no longer taking anti-depressant medication and she had stopped drinking alcohol. Tr. 214-15. The ALJ determined that Plaintiff does not have a "severe" mental impairment and this finding is not contested in this appeal. Tr. 18.

### iii. Hypertension

Plaintiff received treatment at Kaiser Permanente from August 15, 2000, to December 16, 2003, for hypertension. Tr. 167-96. Dr. Brody confirmed the presence of hypertension and stated that it was controlled. Tr. 112.

### b. Vocational Expert's Testimony

Vocational Expert (VE) Malcom Brodcinsky testified before the ALJ that Plaintiff has acquired skills in her past relevant work which would be transferable to over 300 skilled light and sedentary jobs. Tr. 243. The ALJ asked the VE to assess what jobs exist for a hypothetical person in Plaintiff's situation, given her age, education, work related skills and experience, and someone who because of specific physical impairments is limited in performing a full range of work. The ALJ told the VE to assume that this hypothetical person has a maximum functional capacity for light work. Tr. 242.

The VE testified that the hypothetical individual could perform the tasks necessary of a travel sales agent with over 100,000 such jobs in the national economy and 3,000 jobs in the San Francisco Bay Area. Tr. 243-44. Additionally, the VE testified that the hypothetical individual could also perform the duties of a membership sales rep, of which there are approximately 40,000 positions in the national economy and between 750 and 1,000 positions in the Bay Area. Tr. 244.

## C. Summary of ALJ's Findings

The ALJ concluded that Plaintiff is not under a disability, as the term is defined in the Social Security Act and Regulations, "at any time on or before the date of this decision." Tr. 22. The ALJ stated, "I do not find the medical evidence in the record to support the degree of functional limitation alleged by the claimant." Tr. 19. In reaching this determination, the ALJ considered the reports of the two State Agency medical consultants, Dr. Harmon Michelson, and Dr. John Vaillancourt, both of whom found the "claimant's statements that her condition had lasted for years to be not credible

6

because of a lack of corroboration by longitudinal medical evidence of record." Tr. 20. The ALJ also relied on the VE's testimony that Plaintiff has acquired skills in her past relevant work which would be transferable to 300 skilled light and sedentary sales jobs. Tr. 21. The ALJ held that "[w]hile I do not believe that the claimant is at all times symptom-free, I . . . conclude that she has been capable of at least light work activity at all times since her alleged disability onset date." Tr. 20.

The ALJ made the following findings:

1. The claimant filed an application for a period of disability and disability insurance benefits on March 7, 2003 (protective filing date) with an alleged disability onset date of May 24, 2001.

2. The claimant met the special earnings requirements for benefits based on disability under Title II of the Social Security Act at the time of her alleged disability onset and continues to meet those requirements.

3. The claimant has not engaged in substantial gainful activity since May 24, 2001.

4. The claimant has the following medically determinable impairment: Scoliosis.

5. The claimant's Scoliosis significantly limits her ability to perform basic work activities, such as heavy lifting. She has no "severe" mental impairment.

6. It has not been established that the claimant has any impairment or impairments which meet or equal the criteria set forth in any applicable section of the Listing of Impairments found at 20 C.F.R., Part 404, Subpart P, Appendix 1.

7. The claimant has the residual functional capacity to perform light work, as defined at 20 C.F.R. § 404.1567(b).

8. The claimant is precluded from performing her past relevant work as an interior design salesperson by a medically determinable impairment.

9. The claimant reported that she was 52 years old on her alleged disability onset date, has 13 years of education, and employment experience as an interior

        design salesperson.

10.     The claimant has acquired and demonstrated in past work skills which can be used to meet the requirements of a significant range of semi-skilled or skilled jobs at the light or sedentary exertional level, as described in the testimony of the vocational expert.

11.     Taking into consideration the claimant's age, education, employment experience, residual functional capacity, and transferable skills, a finding of "not disabled" is required by Rules 202.03 and 202.15 of the Medical-Vocational Guidelines found at 20 C.F.R., Part 404, Subpart P, Appendix 2.

12.     The claimant's testimony regarding pain and other symptoms is not fully credible for reasons set forth in the body of this decision.

13.     The claimant was not under a "disability" within the meaning of the Social Security Act at any time on or before the date of this decision. This decision is made at step five of the sequential evaluation process. 20 C.F.R. § 416.920(g).

Tr. 21-22.

Accordingly, the ALJ concluded that Plaintiff was not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended. Tr. 22.

## **LEGAL STANDARD**

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998).

Rather, the court must "consider the record as a whole, weighing both the evidence that supports and evidence that detracts" from the Commissioner's conclusion. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Andrews*, 53 F.3d at 1041.

## DISCUSSION

In considering whether a claimant is entitled to benefits, an ALJ conducts a five-step sequential inquiry. 20 C.F.R. § 404.1520(a). At step one, the ALJ considers whether the claimant is engaged in work activity or substantial gainful activity. If the claimant is not engaged in substantial gainful activity, the second step asks whether the claimant has a severe impairment (i.e., an impairment that has a significant effect on the claimant's ability to function). If the claimant has a severe impairment, the third step asks whether the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Social Security Regulations (the "Listings"). If the claimant does not have such a condition, the fourth step asks for an assessment of the claimant's residual functional capacity and whether the claimant is capable of performing her past relevant work. If the claimant is not capable of performing past relevant work, the fifth step considers the assessment of claimant's residual functional capacity and age, education, and work experience, to determine whether the claimant can make an adjustment to other work. If claimant can make an adjustment to other work, the claimant is not disabled. 20 C.F.R. § 404.1520(a).

At Step One, the ALJ found that Plaintiff has not engaged in work activity since her alleged disability onset date of May 24, 2001, and therefore has not engaged in substantial gainful activity since that date. Tr. 18.

At Step Two, the ALJ found that the medical evidence establishes that Plaintiff has Scoliosis. Tr. 18. The ALJ held that Plaintiff's physical impairment significantly affects her ability to do heavy work and therefore is "severe" within the meaning of the regulations. *Id*.

At Step Three, the ALJ found that the medical evidence does not establish that Plaintiff's impairments approach the severity contemplated by any of the musculoskeletal Listings. Tr. 18. "There is no listing which specifically describes scoliosis, and the claimant does not exhibit evidence

9

1 of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required by Listing
2 1.04, which describes disorders of the spine." *Id*. Therefore, the ALJ held that Plaintiff could not be
3 found "disabled" at step three of the sequential evaluation process. *Id*.

4 At Step Four, the ALJ makes a determination of whether Plaintiff retains the residual
5 functioning capacity ("RFC") to perform the requirements of her past relevant work or other work
6 existing in significant numbers in the national economy. Tr. 19. Pursuant to Social Security Ruling
7 96-7p, the ALJ considered evidence of Plaintiff's daily activities, functional restrictions, use of
8 medications, treatments, etc. to evaluate her allegations of disabling pain. *Id*. The ALJ concluded
9 that the medical evidence in the record does not support the degree of functional limitation alleged
10 by Plaintiff. *Id*. The consultative physician Burton Brody, M.D., who examined Plaintiff on June 4,
11 2003, reported moderate stiffness in the lumbar area with 7 to 8 degrees of dextroscoliosis.
12 However, he noted that Plaintiff had no problems getting on and off the exam table or cooperating
13 with the physical examination. *Id*. Dr. Brody diagnosed Plaintiff with Scoliosis of the thoracic
14 spine and hypertension, controlled. However, the ALJ disagreed with Dr. Brody's assessment of
15 Plaintiff's limitations, instead agreeing with the State Agency medical consultant Dr. Harmon
16 Michelson. Dr. Michelson concluded that Plaintiff had no severe impairment, and the severe
17 restrictions suggested were not warranted due to a lack of corroboration by the longitudinal medical
18 evidence of record. Tr. 20. The ALJ held that Dr. Brody's physical limitations are unsupported by
19 the treatment record. *Id*. In the Step Four analysis, the ALJ based his determination on several
20 factors; 1) the number and frequency of doctor visits, (which the ALJ held was less that one would
21 expect from the degree of impairment alleged), 2) the fact Plaintiff takes no medication for pain, and
22 3) the fact that Plaintiff has tried no additional treatment modalities. After carefully considering all
23 the medical and non-medical evidence in the record, the ALJ held that Plaintiff has been capable of
24 at least light work activity at all times since her alleged disability onset date. *Id*. However, with a
25 restriction of light work activity, Plaintiff cannot return to her past work as an interior design
26 salesperson. Tr. 21.

27 At Step Five, based on the testimony of the VE, the ALJ concluded that Plaintiff is capable
28 of making a successful adjustment to work in significant numbers in the national and local economy,

such as Travel Agent or Membership Solicitor, taking into consideration Plaintiff's age, education, and acquired skills which are capable of being transferred to over 300 skilled light and sedentary sales jobs. Tr. 21. Therefore, the ALJ held that under the Medical-Vocational Guidelines, Plaintiff is "not disabled" as defined by the Social Security Act and regulations. *Id*.

### 1. Whether the ALJ Failed to Provide Legally Sufficient Reasons for Rejecting Dr. Brody's Opinion.

Plaintiff alleges that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of the examining physician, Dr. Brody. Specifically, Plaintiff contends that the ALJ erred at step four and five of the sequential evaluation process, in his assessment of Plaintiff's Residual Functional Capacity ("RFC"), by accepting the opinions of non-examining State Agency physicians and rejecting the assessment of Plaintiff's examining physician, Dr. Brody. Dr. Brody opined that Plaintiff's functional capacity assessment was limited. This conclusion was expressly rejected by the reviewing State Agency physicians Harmon Michelson, M.D., and John Vaillancourt, M.D., who concluded that there was absolutely no evidence which would warrant the severe restrictions suggested. Tr. 132. The ALJ held that Plaintiff has the Residual Functional Capacity to perform light work. Tr. 22.

"The opinion of an examining physician is . . . entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Nevertheless, in appropriate circumstances, the opinion of a treating or examining physician may be disregarded. *Id*. at 831. To reject such opinions, an ALJ must at a minimum give specific and legitimate reason for rejecting the treating physician's opinion and those reasons must be supported by substantial evidence in the record. *Id*. at 830. "[W]hen it is an examining physician's opinion that the ALJ has rejected in reliance on the testimony of a non-examining advisor, reports of the non-examining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Furthermore, the Ninth Circuit has consistently held that "[t]he ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881

1  F.2d 747, 750 (9th Cir. 1989); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985)

2  (stating that "questions of credibility and resolutions of conflicts in the testimony are functions

3  solely for the Secretary").

4       Plaintiff argues that as a matter of law, the opinion of an examining physician must be taken

5  over that of a non-examining physician. Plaintiff contends that the ALJ's acceptance of Dr.

6  Michelson's report over Dr. Brody's is reversible error.  Plaintiff also argues that the ALJ erred under

7  20 C.F.R. § 404.1527(d)(5), which states that "[w]e generally give more weight to the opinion of a

8  specialist about medical issues related to his or her area of speciality than to the opinion of a source

9  who is not a specialist."  Dr. Michelson's speciality is obstetrics and gynecology.  As Dr. Michelson

10 did not examine Plaintiff directly and he specializes in an area of medicine not related to Plaintiff's

11 condition, his opinion should be given less weight than Dr. Brody's.

12      Defendant argues that there is substantial evidence in the record to support the

13 determinations made by the non-examining physicians, and that the ALJ and the State agency

14 physicians properly found that Dr. Brody's report was inconsistent with his own findings.  Tr. 19-20;

15 130-33. Specifically, Dr. Brody reported that Plaintiff has "[n]ormal range of motion of all joints

16 with no deformity, no heat, swelling or redness." Tr. 112.  Plaintiff's gait was "normal without [a]

17 limp."  *Id*.   Dr. Brody also noted in his report that "claimant had no problems getting on and off the

18 exam table or cooperating with the physical examination.  *Id*.

19      Plaintiff's argument is based on the faulty assumption that the ALJ gave no specific and

20 legitimate reasons for disregarding the opinion of Dr. Brody.  On the contrary, there is substantial

21 discussion in the decision as to why the ALJ found "the limitations set forth by Dr. Brody to greatly

22 exceed the documented physical findings on his own examination, and unsupported by the treatment

23 records of Dr. Sapru." Tr. 20.  The ALJ concluded that Dr. Brody's diagnosis is inconsistent with

24 the rest of the record, and legitimately questioned whether any of the limitations suggested by Dr.

25 Brody could be substantiated by the record.  Tr. 20.

26      The first factor that the ALJ examined and analyzed is the evidence in the medical record.

27 The ALJ held that there was insufficient evidence to "support the degree of functional limitation

28 alleged" by Plaintiff. Tr. 19.  Plaintiff first saw her treating physician Dr. Suneeti Sapru in March

12

1  2003, complaining of back and neck pain. Tr. 128. This was almost two years after Plaintiff
2  stopped working on account of her alleged physical aliments. The charts and notes in the record
3  reveal no new or changed complaints regarding Plaintiff's neck or back since her initial evaluation.
4  However, in December 2003, Plaintiff was referred to group physical therapy, which consisted of
5  one 90 minute session, wherein the participants were instructed in "how to bend at the hips without
6  flexing the low back, activities of daily living using good body mechanics," among other educational
7  activities. Tr. 166. This is the complete record of the medical care that Plaintiff received for her
8  back. The ALJ properly held that "these brief treatment notes from Kaiser Permanente certainly do
9  not support the level of restriction alleged by the claimant's application." Tr. 19. Additionally, the
10 ALJ noted that the "number and frequency of doctor's visits documented in the record is less than
11 what I would expect from the degree of impairment alleged by claimant. She takes no medication for
12 pain, and has tried no additional treatment modalities." Tr. 20.

13 　　　The underlying rationale for giving preference to a treating physician is based upon the
14 ongoing nature of the relationship between the patient and his physician. Here, the record indicates
15 that Plaintiff's treating physician, Dr. Sapru, is completely silent on the question of Plaintiff's
16 residual functional capability. The ALJ kept the record open for 30 days to permit Plaintiff to "get
17 some kind of RFC statement from the claimant's treating physician." Tr. 252. There is no evidence
18 in the record that Plaintiff ever obtained or submitted such a statement.

19 　　　Another factor the ALJ considered pursuant to Social Security Ruling 96-9p is evidence of
20 Plaintiff's daily activities. Plaintiff stated in her Reconsideration Disability Report that she is unable
21 to garden as she used to, but attributed this limitation to skin irritations and sensitivity to the sun
22 from her medication. Tr. 85. Dr. Brody's report notes, under Social History, that Plaintiff "performs
23 the usual household chores and gardening, but avoids the heavier work." Tr. 111. At the hearing,
24 Plaintiff testified that she drives to the store about once a week to pickup light things, does light
25 dusting around the house, has no problem concentrating on reading, and does exercises for her back.
26 Tr. 220-21.

27 　　　Furthermore, the ALJ considered several other factors such as his impression of Plaintiff at
28 the hearing and the impression of the State Agency medical consultant, Dr. Vaillancourt, who stated

13

in his report, "I suspected that Scoliosis was not the reason she had to stop working." Tr. 133.

Finally, the ALJ considered the reports of the two State Agency medical consultant pursuant to 20 C.F.R. § 404.1527(f), which concluded that "there is absolutely no indication in the evidence . . . which would warrant the severe restrictions suggested" as there was a "lack of corroboration by longitudinal medical evidence of record." Tr. 132.

In the aggregate, this record forms a sufficient basis on which the ALJ could reasonably determine that the examining physician's opinion could be disregarded. The ALJ provided specific and legitimate reasons in his decision why he gave less weight to this opinion; explaining that the limitations "set forth by Dr. Brody greatly exceed the documented physical findings on his own examination, and unsupported by the treatment records of Dr. Sapru," the treating physician. Tr. 20. The ALJ rightfully assumed his role in "resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750.

After examining all the evidence in the record and taking the parties' arguments into consideration, the Court holds that the ALJ did give sufficiently specific and legitimate reasons for rejecting Dr. Brody's assessment. Plaintiff's argument to the contrary is rejected.

### 2.   Whether the ALJ Failed to Provide Legally Sufficient Reasons for Finding Plaintiff's Testimony to be not Credible.

Second, Plaintiff contends that the ALJ's determination that her testimony was not credible is not supported by specific cogent reasons. The ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Regennitter v. Commissioner*, 166 F.3d 1294, 1296 (9th Cir. 1999).

"[An] ALJ may not discredit the claimant's subjective allegations of how bad his or her pain is solely on the ground that those allegations are not supported by objective medical evidence." *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). However, the ALJ can consider a number of factors in making a credibility determination, such as conservative treatment history, lack of pain medication, whether "testimony and records from medical experts indicate [claimant's] physical impairments are not necessarily associated with pain; [claimant's] daily activities are such that she could perform work tasks; and at the hearing there was no indication that she was suffering pain." *Id*. at 1258-59.

14

"The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750.  Here, the record provides substantial evidence to support the ALJ's finding that Plaintiff's testimony of her alleged impairments was "not entirely credible." Tr. 20-21.

Plaintiff contends that the ALJ impermissibly considered his impression of her during the hearing to reach his determination on her credibility.  Plaintiff argues that "[u]nless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.  General findings are insufficient; rather, the administrative law judge must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).  Plaintiff argues that since there is no evidence of malingering in this case, the ALJ failed to substantiate his adverse credibility finding with sufficient evidence in the record.

Defendant contends that the ALJ's personal observations were not the sole factor in making his credibility decision.  Rather, the ALJ evaluated Plaintiff's credibility using the factors listed in Social Security Ruling 96-7p,[7] such as her conservative treatment history, lack of any prescribed pain medications, her daily activities, and the lack of objective medical findings.  Tr. 19-20.

The Court agrees with Defendant.  The record here is clear that the ALJ did not base his adverse credibility determination solely upon his personal observations; rather, he based his conclusion on several of the permissible factors outlined in SSR 96-7p and in *Droin*, 966 F.2d at 1258-59.

The ALJ noted the lack of objective medical evidence corroborating Plaintiff's testimony. However, the ALJ also found "the claimant's activities of daily living to be inconsistent with an inability to do at least light level work." Tr. 20.  Further, the ALJ found "the evidence of the

---

[7] The seven factors enumerated in SSR 96-7p are: 1) individual's daily activities, 2) locations, duration, frequency of the individual's pain or other symptoms, 3) factors that precipitate and aggravate the symptoms, 4) the type, dosage, effectiveness, and side effects of any medications the individual takes or has taken to alleviate pain or other symptoms, 5) treatment, other than medication, the individual receives or has received for relief of pain of other symptoms (e.g., lying flat on his or her back, standing for 15-20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

15

claimant's treatment to be inconsistent with an inability to do light level work . . . She takes no medication for pain, and has tried no additional treatment modalities." *Id*. "Finally, I have considered several other miscellaneous factors in my assessment of the claimant's credibility . . . I concur with the state agency medical consultant who suspected that Scoliosis was not the reason she 'had to' stop working." *Id*.

After examining all the evidence in the record and taking the parties' arguments into consideration, the Court holds that the ALJ's credibility determination is supported by substantial evidence in the record, and the ALJ provided clear and convincing reasons for finding Plaintiff's testimony regarding her pain and other symptoms not entirely credible.

**3.     Whether the ALJ's Hypothetical Question to the Vocational Expert was Proper.**

Plaintiff argues that the ALJ's reliance on the VE's testimony was erroneous, because the hypothetical presented to the VE did not include all of Plaintiff's limitations.  Specifically, the hypothetical did not include Dr Brody's opinion that Plaintiff was incapable of working a full eight hours or her subjective pain complaints.  However, the hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by evidence in the record.

The Ninth Circuit has held that it is proper for an ALJ to limit hypothetical questions to restrictions supported by substantial evidence in the record. "Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [claimant] had claimed, but had failed to prove." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

The Court finds that the ALJ's hypothetical to the VE was proper.  The ALJ asked about jobs that met Plaintiff's vocational and educational background, given her physical limitation of performing only "light work." Tr. 242.  The ALJ instructed the VE to assume "her maximum functional capacity was for light work, that is lifting no more than 20 pounds even occasionally, 10 pounds frequently." *Id*.  Additionally, the ALJ asked the VE to suggest jobs with light exertional activity which did not involve a "full range of work at all levels." *Id*.  The ALJ also questioned the VE regarding the transferability of Plaintiff's specific skills for these jobs and found that there would

16

be little vocational adjustment.  Any of the proposed jobs that required more than minimal adjustment, such as assistant drafter, were rejected.  Tr. 246.  After reviewing all the evidence, the ALJ concluded that Plaintiff has acquired skills in her past relevant work experience that would be transferable to the jobs of Membership Solicitor and Promoter of Group Ticket Sales.  Tr. 21.

Furthermore, as noted above, the severe functional limitations suggested by Dr. Brody were not incorporated within the hypothetical questions because the ALJ was unpersuaded by Dr. Brody's report.  When asked by Plaintiff's attorney, the VE testified that if Plaintiff's physical restrictions were held to be less than sedentary, she would be unable to perform significant work.  Tr. 248.  However, this finding was properly disregarded by the ALJ, as the extreme restrictions reported by Dr. Brody were not supported by the evidence in the record.

After examining all the evidence in the record and taking the parties' arguments into consideration, the Court holds that the hypothetical question posed by the ALJ was proper, because it contained all the limitations that were supported by the record.

In sum, the Court holds that the ALJ's decision is supported by substantial evidence and did not involve legal error.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment or Remand is DENIED.  Defendant's Cross-Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED THAT the Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated:_11/28/09

SAUNDRA BROWN ARMSTRONG
United States District Judge